NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0704n.06

Nos. 10-4483, 10-4552

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 03, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellant/Cross-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| SAMUEL R. CICCOLINI, | ) | |
| | ) | |
| Defendant-Appellee/Cross-Appellant. | ) | |
| | ) | |

Before:  SILER and WHITE, Circuit Judges; REEVES, District Judge.[*]

**DANNY C. REEVES, District Judge.**  Samuel Ciccolini pleaded guilty to one count of structuring financial transactions to evade reporting requirements and one count of making and subscribing a false tax return.  He was sentenced to one day of incarceration, three years of supervised release, and a $350,000 fine.  In addition, the district court ordered Ciccolini to pay $3,500,000 in restitution to a charitable foundation that the district court believed had been harmed by his crimes.  Both parties appealed, contending that the restitution order was unlawful because the district court lacked authority to impose it.  We agree.  As a result, Ciccolini's sentence will be vacated and the matter will be remanded for resentencing.

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

I.

Ciccolini is an ordained Catholic priest and the former director of the Interval Brotherhood Home, a drug and alcohol rehabilitation facility that he founded in Akron, Ohio. He was also the president of the Interval Brotherhood Home Foundation, Inc. ("the Foundation"), which was established in 1988 to raise funds for the Interval Brotherhood Home. The charities were highly successful, serving thousands of people and accumulating assets of approximately $13,600,000 by October 2010.

Between April and June 2003, Ciccolini deposited $1,038,680 in his bank accounts by making 139 separate deposits of less than $10,000 each. Ciccolini admitted that these deposits were structured so as to avoid currency reporting requirements. He also admitted filing false tax returns for tax years 2002 to 2006, leaving a total of $292,136 in unpaid taxes. His explanation for the source of the structured funds was that for thirty-three years he had "hoarded, accumulated salary, gifts, personal donations, contributions, [and] bequests." The unreported income, however, consisted of money Ciccolini had embezzled from the Foundation. After admitting the embezzlement to the Foundation, he repaid the approximately $1,300,000 that he had taken.

Ciccolini was charged in an information with one count of structuring financial transactions to evade reporting requirements in violation of 31 U.S.C. § 5324(a)(3), and one count of making and subscribing a false tax return in violation of 26 U.S.C. § 7206(1). Neither offense was alleged to have involved the proceeds of illegal activity. Ciccolini pleaded guilty to both charges pursuant to a plea agreement. Prior to his guilty plea, Ciccolini paid $292,136 to the Internal Revenue Service as restitution relating to the tax charge.

During the sentencing hearing, the district court addressed the parties' objections to the Presentence Investigation Report (PSR), then calculated Ciccolini's total offense level and criminal history under the sentencing guidelines. The district court's guideline calculations differed significantly from those of the probation officer, who had recommended a guideline range of eighteen to twenty-four months based on a total offense level of 15. Because the district court found that Ciccolini had testified falsely during his plea colloquy regarding the source of the structured funds, it denied any adjustment for acceptance of responsibility and applied a two-level enhancement for obstruction of justice. The district court also determined that the funds used in the structuring offense were the proceeds of illegal activity, justifying a sixteen-level enhancement on that count. Finally, the district court applied a two-level increase to the tax count based on its finding that Ciccolini's unreported income was derived from criminal activity. The resulting total offense level of 26 (as amended at the sentencing hearing), combined with Ciccolini's criminal history category of I, yielded a guideline range of sixty-three to seventy-eight months of imprisonment.

The district court next turned to the sentencing factors set forth in 18 U.S.C. § 3553(a). Emphasizing the need for Ciccolini's sentence to serve the purpose of general deterrence, the judge explained:

> I am influenced in this at least in part by certain writings made by a Nobel-winning economist by the name of Becker who wrote on criminal punishment, and he suggests or argues that in circumstances such as financial transactions like this, that incarceration is less important than providing a disincentive to others and that the disincentive can sometimes be obtained through financial penalties.
>
> So I think the sentence I'm going to impose today is going to serve those purposes.

Shortly thereafter, the court raised "the issue of restitution," which it indicated would "be a major

factor in" Ciccolini's sentence.

> I do find that there is some split of authority, but Congress changed the restitution laws, and I think that they changed it in major effort to try to broaden the availability of restitution for conduct to afford an ability to impose restitution that harms another proximately as a result of the commission of the offense.
>
> And in this case I think the Foundation has been proximately harmed by the commission of your offense.
>  . . . .
>
> . . . . I still think the broad, broad majority of the additional monies that you have are monies that were embezzled from the Foundation in one fashion or another.
>  . . . .
>
> So embezzlement, I'm going to seek to impose an order that imposes restitution upon you and requires you to transfer monies back to the Foundation.

The district court ordered Ciccolini to make restitution to the Foundation in the sum of

$3,500,000, warning that if he failed to comply with the restitution order, he would "be subject to

being sent directly to prison."  Ciccolini was also sentenced to one day of incarceration on each

count, to be served concurrently, followed by a three-year term of supervised release.  In addition,

the district court imposed a $350,000 fine ($250,000 on the structuring count and $100,000 on the

tax count).  The United States objected to the length of incarceration.

Following the sentencing hearing, the district court issued a sentencing memorandum "to

provide a thorough explanation of its sentence of Defendant Samuel R. Ciccolini."  In the

memorandum, the district court found that Ciccolini's "vast wealth" — almost $5.6 million,

including a $5 million trust account — could not have been accumulated by legitimate means.  By

the district court's calculations, Ciccolini was "unable to legitimately account for" approximately

4

$4,500,000. The district court concluded that Ciccolini had embezzled at least $4,000,000 from the Foundation in addition to the $1,300,000 he admitted to having taken.

The memorandum also expanded upon the district court's earlier discussion of the § 3553 factors. With respect to available sentences, the district court declared that, in addition to the fines authorized for each count, it could "order an award of restitution, per 18 U.S.C. § 3663, to the victims of the offense conduct." The court reiterated its reliance on Becker's views concerning general deterrence:

> In crafting a punishment that will most adequately deter similar conduct by other individuals in the future, the Court is influenced by the writings of Nobel Prize winning economist Gary Becker. In his seminal article on crime and punishment, Professor Becker recommends more emphasis on fines — and less on incarceration — for many white-collar or financial offenses. Becker theorizes that in financial crimes the incarceration of the specific offender is less important than providing a disincentive to future offenders through financial penalties. The Court generally agrees with those propositions and finds them persuasive here. With Becker's theory in mind, the Court finds that imposing a financial penalty in the current case, rather than prison time, will adequately deter future financial crime.

"Related to using a financial penalty to serve as a general deterrent," the district court continued, "is the need to impose restitution to the victims of the offense."

The next several pages of the sentencing memorandum addressed whether the district court could order restitution to the Foundation. The district court acknowledged that it had no power to order restitution without statutory authority, then quoted § 3663 as follows: "Under 18 U.S.C. § 3663(a), a court, 'when sentencing a defendant convicted of an offense[,] . . . may order . . . that the defendant make restitution to any victim of such offense.'" The question raised by the statute, in the district court's view, was whether the Foundation qualified as a "victim" under the language

of the restitution statute. The district court determined that it was, "because the Home and Foundation were proximately harmed by Ciccolini's scheme to embezzle, of which the charged conduct was a part." After examining several cases in which restitution was found to be proper, the district court concluded that precedent from the Sixth Circuit and elsewhere "allows for a restitution order that takes the Defendant's entire criminal conduct into account where non-charged conduct is closely related to the charged conduct." Requiring Ciccolini to pay restitution, the district court found, would "serve[] the dual purpose of general deterrence under § 3553(a)(2) . . . and also serve[] the purpose of providing restitution to the victims of the offense conduct under 18 U.S.C. § 3553(a)(7)."

The United States appealed, arguing that Ciccolini's entire sentence must be vacated and the case remanded for resentencing. Ciccolini agrees in his cross-appeal that the restitution order should be vacated. He maintains, however, that the remainder of his sentence should be affirmed.

II.

As the district court correctly observed, federal courts possess "no inherent power to award restitution." *United States v. Evers*, 669 F.3d 645, 655 (6th Cir. 2012) (citation and quotation marks omitted). Thus, restitution may be ordered "only when and to the extent authorized by statute." *Id.* We consider de novo whether such statutory authority exists. *United States v. Elson*, 577 F.3d 713, 720 (6th Cir. 2009).

The Victim and Witness Protection Act (VWPA), 18 U.S.C. § 3663, governs restitution in criminal cases. It provides that a court,

6

> when sentencing a defendant convicted of an offense under [title 18], section 401, 408(a), 409, 416, 420, or 422(a) of the Controlled Substances Act (21 U.S.C. 841, 848(a), 849, 856, 861, 863) . . . , or section 5124, 46312, 46502, or 46504 of title 49, other than an offense described in section 3663A(c), may order, in addition to or, in the case of a misdemeanor, in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of such offense, or if the victim is deceased, to the victim's estate. The court may also order, if agreed to by the parties in a plea agreement, restitution to persons other than the victim of the offense.

18 U.S.C. § 3663(a)(1)(A). Thus, the district court's selective quotation notwithstanding, subsection (a)(1)(A) authorizes restitution orders only in certain types of criminal cases. The VWPA also permits an order of restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3).

The restitution award was impermissible in this case. Despite the district court's reliance on § 3663(a), Ciccolini was not convicted under any of the statutes listed in that section. *See* 18 U.S.C. § 3663(a)(1)(A); *see also United States v. Butler*, 297 F.3d 505, 518 (6th Cir. 2002) (noting that § 3663(a)(1) "does not apply to Title 26 offenses"). Likewise, Ciccolini's plea agreement did not contain a provision for payment of restitution beyond the amount he had already paid to the IRS. *See* 18 U.S.C. § 3663(a)(3). In short, the court had no legal authority to order restitution to the Foundation. Consequently, that portion of Ciccolini's sentence must be vacated. *See United States v. Edkins*, 421 F. App'x 511, 518 (6th Cir. 2010) ("Because Edkins pleaded guilty to violating 26 U.S.C. § 7201 — an offense to which the VWPA does not apply — the court lacked authority to order VWPA restitution. . . . In the absence of statutory authority for this restitution order, we vacate that portion of the sentence.").

Additionally, because the restitution order was an integral part of Ciccolini's sentence, the remainder of his sentence cannot stand. As the Supreme Court explained recently, "'[a] criminal sentence is a package of sanctions that the district court utilizes to effectuate its sentencing intent.'" *Pepper v. United States*, 131 S. Ct. 1229, 1251 (2011) (quoting *United States v. Stinson*, 97 F.3d 466, 469 (11th Cir. 1996) (per curiam)). Since that intent "may be undermined by altering one portion of the calculus, an appellate court when reversing one part of a defendant's sentence may vacate the entire sentence . . . so that, on remand, the trial court can reconfigure the sentencing plan . . . to satisfy the sentencing factors in 18 U.S.C. § 3553(a)." *Id.* (omissions in original) (citations and internal quotation marks omitted).

Here, the district court considered Ciccolini's offenses to be very serious, as evidenced by the fact that it calculated a significantly higher guideline range than that recommended in the PSR. There is no doubt that the restitution order was the core of Ciccolini's sentence based on the district court statements during the sentencing hearing. Under these circumstances, vacating only the restitution order would clearly undermine the district court's sentencing intent. *See id.*

III.

For the foregoing reasons, we vacate Ciccolini's sentence and remand the case so that a new sentencing hearing may be conducted de novo.